Bobby Lee Vickery v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.   2-04-422-CR

2-04-423-CR

BOBBY LEE VICKERY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

The State charged Appellant Bobby Lee Vickery with indecency with a child by contact in two separate indictments.  A jury convicted Vickery in both causes, and the trial court sentenced him to twenty-five years’ confinement in cause number 0890792D and thirty years’ confinement in cause number 0890810D.  Vickery raises six points, challenging various rulings made during trial.  We will affirm.

II.  Factual Background

During the summer and fall of 2002, two brothers, J.R.T. and J.D.T., lived in Tarrant County with their mother, father, and their two younger siblings.
  J.R.T. was ten years old and J.D.T. was eight or nine years old.  Vickery formed a friendship with the family that summer and often spent time at the boys’ home performing automotive work with their father. 
 Vickery occasionally took J.R.T., J.D.T., and their two siblings for rides in his own truck, usually after sunset.  During these brief trips, Vickery allowed J.R.T. and J.D.T. to sit on his lap one at a time and to hold the steering wheel while he  drove.  When the boys would place their hands on the steering wheel, Vickery would reach down and grab the boys’ penises over their clothing for a few seconds.  Vickery touched the boys in this manner between ten and fifteen times each, but neither J.R.T. nor J.D.T. saw Vickery touch the other.  J.D.T. further testified that Vickery touched his penis once after he and his family had moved to his grandmother’s house.

J.R.T. and J.D.T. eventually told their mother, Teresa McGinnis, about Vickery’s conduct, and she notified the Tarrant County Sheriff’s Office. McGinnis confronted Vickery with the boys’ accusations.  Vickery responded that he did not touch the boys in that manner, but if he did, he was drunk at the time.  Vickery gave a non-custodial, oral statement to police in which he acknowledged that the boys would sometimes knock his hands off of the steering wheel, causing his hands to fall “down there.” 

III.  Request for Election

In his first point, Vickery argues that the trial court erred by refusing to require the State to elect the particular conduct that it would rely upon for conviction at the close of its case-in-chief.  The State contends that Vickery invited any error.  The trial court in its discretion may order the State to make its election at any time prior to the resting of the State’s case-in-chief.  
O’Neal v. State
, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988).  However, once the State rests its case-in-chief, in the face of a timely request by the defendant, the trial court must order the State to make its election.  
Id.
  Failure to do so constitutes error.  
Id
.

Here, Vickery filed a motion to require an election by the State.  Vickery’s motion alleged that although each indictment charged that he committed a particular offense “on or about September 1, 2002," he had received notice from the State that it would offer evidence of multiple incidents of the same conduct as that alleged in the indictment.  Accordingly, Vickery’s motion for an election requested that he 

be given notice in writing 
prior to trial 
of the particular incident upon which the State will elect to proceed.  In the alternative, the Defendant moves the Court to require the State, 
at the close of its case in chief
, to elect the particular act or conduct and the particular date thereof upon which the State relies upon for conviction.  In the alternative, the Defendant moves the Court, 
at the close of the evidence
, to require the State to elect the particular date and incident of conduct that it relies upon in seeking the conviction of the Defendant.  [Emphasis added.]

In light of the above-italicized language in Vickery’s motion, the State contends that Vickery’s motion invited the trial court to require the State to make an election at any one of three points, either prior to trial, at the close of its case-in-chief, or at the close of the evidence.  The State contends that Vickery cannot be heard to complain because the trial court complied and adopted his third proposed option.  Vickery points out that he nonetheless objected to the trial court’s refusal to require the election after the close of the State’s evidence.
(footnote: 2)
 The State concluded its case-in-chief and rested.  Outside the presence of the jury, Vickery verified for the record his desire to not testify, and defense counsel indicated that Vickery would rest in front of the jury behind the State. The prosecutor then requested to re-open so that the trial court could take judicial notice of the dates the indictments were returned in each case; defense counsel did not object.  After, the jury returned to the courtroom, the State re-opened and requested the trial court to take judicial notice as requested, which the trial court did, and both sides announced that they rested and closed. The State’s election—as indicated by the prosecutor during the discussion outside the presence of the jury before it re-opened—is set out in the trial court’s charge to the jury in each cause.  The trial court’s charge to the jury in cause number 0890792D states,

The State has elected to proceed on the conduct described by [J.D.T.] as the first time the defendant is alleged to have touched the genitals of [J.D.T.] by grabbing them with his hand occurring while [J.D.T.] resided at the residence on Jet Street and was 8 or 9 years of age.

The trial court’s charge to the jury in cause number 0890810D states,

The State has elected to proceed on the conduct described by [J.R.T.] as the first time the defendant is alleged to have touched the genitals of [J.R.T.] by grabbing them with his hand occurring while [J.R.T.] resided at the residence on Jet Street and was about 10 years of age.

Except for his request for a limiting instruction, Vickery’s counsel asserted no other objections to the charge.

The record clearly demonstrates that, although the trial court ruled that the State would not be required to make an election until the conclusion of the evidence, the State in fact made its election at the conclusion of its case-in-chief.  Vickery indicated that the State’s election satisfied him for purposes of resting and then rested behind the State.

Because Vickery’s motion for an election proposed that the trial court require the State to make its election at the close of the evidence and because Vickery indicated after the State made its election that he was satisfied, for the purposes of resting, 
Vickery’s ability to complain of these decisions by the trial court is foreclosed.  
See Prystash v. State
, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (discussing doctrine of invited error and stating, “If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error.”), 
cert. denied
, 529 U.S. 1102 (2000); 
Benson v. State
, 496 S.W.2d 68, 70 (Tex. Crim. App. 1973 ) (“Appellant cannot now be heard to complain because the court granted him what he asked for.”).  Alternatively, we hold that any error from these rulings was harmless under either the constitutional or non-constitutional harm analyses.  
See
 
Tex. R. App. P.
 44.2(a), (b).  Here, the State made its election at the conclusion of its case-in-chief, the trial court charged the jury concerning the elected conduct, ensuring a unanimous verdict; and Vickery does not claim that he was left in doubt as to which offense he was called upon to defend in his case-in-chief.  We overrule Vickery’s first point.

IV.  Outcry Testimony

In his second point, Vickery argues that the trial court erred by admitting a portion of McGinnis’s outcry testimony because it was not included in the “State’s Notice of Intent to Use Outcry Statement.”  In each cause, the State provided written notice of its intent to offer outcry testimony through McGinnis, the boys’ mother.  The notice summarizes the proposed statements as follows:

On or about November, 2002, [J.R.T.] and [J.D.T.] stated that the Defendant would touch their penises while they were sitting in his lap driving his black truck.  They stated that the Defendant did this several times, but attempted to do it more than he actually did. 

In a hearing outside the presence of the jury, McGinnis testified that J.D.T. and J.R.T. told her that Vickery touched them in their private area while riding in Vickery’s truck.  McGinnis also testified, however, that J.D.T. told her Vickery had touched his private area on one occasion while at his grandmother’s house in the front yard.  Defense counsel objected and argued that McGinnis should not be permitted to testify about the boys’ statements concerning any touching that occurred outside of the truck because such testimony would go beyond the scope of the notice.  The trial court overruled the objection and allowed McGinnis to testify about J.D.T.’s outcry concerning the incident at his grandmother’s house.

The State’s brief contains no analysis of this alleged trial court error; after summarizing the facts, the State proceeds directly to a harm analysis. Therefore, we presume the State concedes that the trial court abused its discretion by admitting McGinnis’s testimony that Vickery touched J.D.T. at his grandmother’s house.  Accordingly, our task now is to determine whether the trial court’s error was harmful.

Error in the admission of evidence is subject to a harm analysis under rule 44.2(b) of the rules of appellate procedure.  
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); 
Matz v. State
, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref’d).  Under rule 44.2(b), we are to disregard any error unless it affected appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall v. State
, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref’d).

The improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence.  
Brooks v. State
, 990 S.W.2d 278, 287 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 956 (1999); 
Matz
, 21 S.W.3d at 912.  In the instant case, J.D.T. testified without objection that Vickery touched him while he was playing outside of his grandmother’s house.  McGinnis’s testimony about the touching that occurred outside of the grandmother’s house is cumulative of J.D.T.’s properly admitted testimony on the same issue.  We conclude that, in the context of the entire case against Vickery, the trial court’s error in admitting the testimony in question did not have a substantial or injurious effect on the jury’s verdict and did not affect Vickery’s substantial rights.  
See King
, 953 S.W.2d at 271.
  
Thus, we disregard the error, and we overrule Vickery’s second point.
  See 
Tex. R. App. P.
 44.2(b)
; Poole v. State
, 974 S.W.2d 892, 899 (Tex. App.—Austin 1998, pet. ref’d) (holding any error in admitting mother’s outcry testimony cured by admission of complainant’s testimony).

V.  Motion for Mistrial

In his third point, Vickery argues that the trial court erred by denying his motion for mistrial after a State’s witness testified about an extraneous offense in violation of the trial court’s limine order.  The State responds that the trial court did not abuse its discretion by denying Vickery’s motion for mistrial. Mistrials are an extreme remedy for prejudicial events occurring during the trial process.  
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996); 
Jackson v. State
, 50 S.W.3d 579, 588 (Tex. App.—Fort Worth 2001, pet. ref’d).  The declaration of a mistrial ought to be an exceedingly uncommon remedy for residual prejudice remaining after objections are sustained and curative instructions are given.  
Bauder, 
921 S.W.2d at 698.  For this reason, judicial admonishments to the jury are presumed effective.  
Id
.

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial.  
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); 
Primes v. State
, 154 S.W.3d 813, 814 (Tex. App.—Fort Worth 2004, no pet.).  Its resolution depends on whether the trial court’s instruction to disregard cured any prejudicial effect.  
West v. State,
 121 S.W.3d 95, 107 (Tex. App.—Fort Worth 2003, pet. ref’d).  Generally, an instruction to disregard impermissible argument cures any prejudicial effect. 
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant is a trial court required to grant a mistrial.  
Bauder
, 921 S.W.2d at 698.

The trial court determined the admissibility of McGinnis’s outcry testimony outside the presence of the jury.  McGinnis testified that Vickery had asked J.R.T. to find out whether he, Vickery, could touch J.R.T.’s cousin.  The following exchange occurred just before McGinnis testified:

The Court:  Okay.  I’ll overrule the objections to the statements.  I’ll allow both statements.  There was some testimony about one of the kids telling her something about another child.  You’re not going to put that on?

[Prosecutor]:  No, Your Honor.

The Court:  Okay.

[Prosecutor]:  We have instructed all of our witnesses to not go into any extraneous acts unless specifically directed to do so.

The Court:  Okay.

Nonetheless, McGinnis testified,

[Prosecutor]:  Okay.  Tell me first what [J.R.T.] told you happened.

[McGinnis]:  He told me that Bob had been touching him in his private 
and that he asked to give a proposition to his cousin.

[Defense Counsel]:  Objection, Your Honor, to 404(b) and the motion in limine that’s in place as agreed to.

The Court:  I’ll sustain the objection to that last answer.

[Defense Counsel]:  Your Honor, I also object as non responsive and ask that the jury be instructed to disregard it.

The Court:  I will instruct the jury to disregard that last answer.

[Defense Counsel]:  Your Honor, also, I would move for a mistrial in light of the violation of the limine and also the 404(b) motion that was granted, and I would move for a mistrial.

The Court:  I’ll deny the motion for mistrial.  [Emphasis added.]

Vickery argues that the trial court erred by denying his motion for mistrial because the trial court’s instruction to the jury to disregard McGinnis’s statement about Vickery asking J.R.T. to proposition his cousin “was not sufficient to cure the problem.”  We cannot agree.  McGinnis testified that Vickery “asked [J.R.T.] to give a proposition to his cousin,” and defense counsel promptly objected before McGinnis could testify any further.  This isolated statement, unlike her testimony outside the presence of the jury, did not include any particular details.  Moreover, before McGinnis testified, the prosecutor stated that she had instructed her witnesses that they were not to discuss any extraneous acts unless specifically instructed to do so; thus, the statement was not the result of prosecutorial misconduct.  We cannot conclude that McGinnis’s statement was “so prejudicial that expenditure of further time and expense would be wasteful and futile.”  
See Hawkins
, 135 S.W.3d at 77.  Under these circumstances, we must presume that the instruction was effective.  
See Bauder
, 921 S.W.2d at 698.  Accordingly, we hold that the trial court did not abuse its discretion by denying Vickery’s motion for mistrial.  
Hawkins
, 135 S.W.3d at 77.  We overrule Vickery’s third point.

VI.  Jury Charge

In his fourth point, Vickery complains that the trial court erred by denying his request for an instruction limiting the jury’s consideration of extraneous offense evidence.  Specifically, Vickery argues that the trial court should have instructed the jury that prior bad acts and extraneous offenses could be considered only for the purposes of showing the state of mind of Vickery and the child and their previous and subsequent relationship.
(footnote: 3) 

A party opposing the admission of evidence has the burden of requesting a limiting instruction at the introduction of the evidence.  
Hammock v. State
, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001).  Once evidence is received without a limiting instruction, it becomes part of the general evidence and may be used for all purposes.  
Id
.  Allowing the jury to consider evidence for all purposes and then telling them to consider that same evidence for a limited purpose asks the jury to do the impossible.  
Id
. at 894.  Thus, if a limiting instruction is to be given, it must be given when the evidence is admitted to be effective.  
Id
.

We have reviewed the record, and Vickery did not request a limiting instruction for any evidence admitted during trial that is presumably extraneous in nature.  Consequently, the evidence was admitted for all purposes, and the trial court was not required to include a limiting instruction in its charge to the jury.  
See id
. at 895; 
King v. State
, Nos. 14-02-00204-CR, 14-02-00205-CR, 2003 WL 1884295, at *5 (Tex. App.—Houston [14th Dist.] April 17, 2003, pet. ref’d) (not designated for publication).  We overrule Vickery’s fourth point.

VII.  Comment on Weight of Evidence

In his fifth point, Vickery argues that he was deprived of a fair and impartial trial because the trial court made an improper comment on the weight of the evidence in its charge to the jury.  
See 
Tex. Code Crim. Proc. Ann.
 art. 36.14 (Vernon Supp. 2004-05).

The function of the jury charge is to instruct the jury on the law applicable to the case.  
Dinkins v. State
, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995), 
cert. denied
. 516 U.S. 832 (1995).
  
A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous.  
Whaley v. State
, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986).  In examining alleged jury charge error, we determine (1) whether error actually existed in the charge and (2) if an error existed, whether sufficient harm resulted from the error to require reversal.  
Mann v. State
, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998).
(footnote: 4)
 The complained of portion of the jury charge appears as follows:

The State has elected to proceed on the conduct described by [J.D.T.] as the first time the defendant is alleged to have touched the genitals of [J.D.T.] by grabbing them with his hand occurring while [J.D.T.] resided at the residence on Jet Street and was 8 or 9 years of age.
(footnote: 5)

Vickery argues that the charge improperly comments on the weight of the evidence because it states that “‘the conduct . . . occur[red]’ instead of stating that ‘the conduct, if any, . . . which allegedly occurred.”  We disagree.  A commonsense reading of the sentence reveals that it can be broken down into two primary parts:  the first being, “The State has elected to proceed on the conduct described by [J.D.T.],” and the second being, “as the first time the defendant is alleged to have touched the genitals of [J.D.T.] by grabbing them with his hand occurring while [J.D.T.] resided at the residence on Jet Street and was 8 or 9 years of age.”  The first part of the sentence indicates that the State has chosen a particular line of conduct that it will rely upon for conviction.  The second part of the sentence describes the conduct the State has chosen to proceed upon.  The first part inevitably leads one to conclude that J.D.T., during his testimony, described some “conduct” that may or may not have occurred between Vickery and himself.  Whether the jury chose to believe J.D.T.’s testimony concerning this conduct does not negate the fact that he did indeed testify about some conduct.  The second part of the sentence clearly uses the word “alleged” as a modifier of the entire descriptive phrase—the “conduct” to which J.D.T. testified.  Accordingly, we hold that this portion of the jury charge was not a comment on the weight of the evidence.  
See generally Hathorn v. State
, 848 S.W.2d 101, 114 (Tex. Crim. App. 1992) (reasoning trial court’s non-use of words “alleged” and “if any” not a comment on the weight of the evidence),
 cert. denied
, 509 U.S. 932 (1993).  Consequently, we need not perform a harm analysis.  
See Mann
, 964 S.W.2d at 641.  We overrule Vickery’s fifth point.

VIII.  Witness Testimony Read to Jury

In his sixth and final point, Vickery argues that the trial court erred by including testimony concerning an extraneous offense in testimony that was read to the jury during deliberations.  He complains that part of the testimony that was read “included a description of the incident which clearly was not the one elected by the State and given in the jury charge as being relied upon for conviction.” 

Article 36.28 of the Texas Code of Criminal Procedure provides,

In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter’s notes that part of such witness testimony or the particular point in dispute, and no other . . . .

Tex. Code Crim. Proc. Ann.
 art. 36.28 (Vernon 1981).  Thus, after the trial court receives a proper inquiry from the jury, it must interpret the communication, decide what sections of the testimony will best answer the inquiry, then limit the rereading accordingly.  
Brown v. State
, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994).  We review the trial court’s determination of what testimony should be reread to the jury in response to an inquiry during deliberations for an abuse of discretion.  
Id.
; 
Iness v. State
, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980).

The trial court received a number of notes from the jury during its deliberations.  One note read, “We disagree as to the detective’s statement about the position of the defendant’s hands on the steering wheel.”  Another note read, “We disagree as to the boys’ testimony about how the genitalia was touched or squeezed.  What was the phraseology used by [J.R.T.] and [J.D.T.]?”  After defense counsel asserted his objection to part of the proposed testimony to be read to the jury, the court stated, “The court reporter has researched her notes, and she’s going to read you what we think answers your question.”  A portion of the testimony reread to the jury included J.D.T.’s testimony describing Vickery touching him outside of his grandmother’s house.  Vickery objected that the inclusion of the testimony describing the “porch incident” at J.D.T.’s grandmother’s house would cause the jury to misuse this extraneous offense information and “create[] the risk that the decision of the jury would not be unanimous as to the offense the State had chosen to rely upon.” 

The record demonstrates that the trial court selected testimony that it considered would best resolve the disagreement between the jury members. Indeed, the testimony read to the jury includes excerpts from J.D.T.’s and J.R.T.’s testimony wherein they describe when Vickery touched their genitalia.  The testimony appears to address the jury’s specific inquiry while not delving into extraneous matters.  Moreover, the jury charge specifically instructed the jury as to what conduct the State had elected to rely upon for conviction.  We cannot agree with Vickery that simply reading testimony that included conduct not relied upon by the State for the conviction caused the jury to convict him for an offense not elected by the State.  We must presume that the jury abided by the trial court’s instructions, and there is no evidence to show otherwise.  
Hutch v. State
, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (“[A]bsent evidence to the contrary, we presume the jury followed the law provided by the charge.”).  We hold that the trial court did not abuse its discretion by including testimony that Vickery touched J.D.T.’s genitalia outside of his grandmother’s house in a portion of the testimony read to the jury during deliberations.  
See Brown
, 870 S.W.2d at 55.  Accordingly, we overrule Vickery’s sixth point.

IX.  Conclusion

Having overruled all six of Vickery’s points, we affirm the trial court’s judgment.        

PER CURIAM

PANEL F: WALKER, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 15, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
After the trial court indicated that it would require the State to make an election at the close of all of the evidence, Vickery lodged the following objection:

[Defense Counsel]: . . . .  But I do just note for the record by exception that I object that the State will not be required to make their election when they rest their case-in-chief.

3:
The only extraneous offense evidence pointed to by Vickery as potentially subject to this instruction is evidence of “improper touches” between himself and J.R.T. and J.D.T. 

4:
Vickery did not object at trial that this portion of the jury charge constituted a comment on the weight of the evidence. 

5:
Except for the name and age of the child, cause number 0890810D included an identical paragraph.